**Case No. 25-10897**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

LESTER LORENZO RUMMANS,
Plaintiff – Appellant

v.

HSBC BANK USA, NATIONAL ASSOCIATION, as Trustee for MASTR
Reperforming Loan Trust 2005-2; SPECIALIZED LOAN SERVICING, L.L.C.;
and NORTHSKY, L.L.C.,
Defendants – Appellees

---

On Appeal from the U.S. District Court
Northern District of Texas, Dallas Division
Civil Action No. 3:22-cv-2046

---

**APPELLANT'S BRIEF**

---

J.B. Peacock, Jr.
David M. Vereeke
**GAGNON, PEACOCK & VEREEKE, P.C.**
1349 Empire Central Drive
Suite 500, Lock Box 5
Dallas, Texas 75247
Telephone:  (214) 824-1414
Facsimile:  (214) 824-5490

**ATTORNEYS FOR APPELLANT**

Dated:  October 29, 2025.

# CERTIFICATE OF INTERESTED PERSONS

In the appeal *Lester Lorenzo Rummans*, Plaintiff-Appellant v. *HSBC Bank USA, National Association as Trustee for MASTR Reperforming Loan Trust 2005-2, Specialized Loan Servicing LLC, and Northsky LLC,* Defendants-Appellees, Case No. 25-10897, the undersigned counsel of record certifies the following listed persons and entities with an interest in the outcome of this case. These representations are made pursuant to FED. R. APP. P. 26.1 and 5TH CIR. R. 28.2.1 to enable the Judges of this Court to evaluate possible disqualification or recusal.

Lester Lorenzo Rummans (Plaintiff-Appellant)
J.B. Peacock, Jr.  (Attorney for Plaintiff-Appellant)
David M. Vereeke  (Attorney for Plaintiff-Appellant)
GAGNON, PEACOCK & VEREEKE, P.C. (Law firm for Plaintiff-Appellant)

HSBC Bank USA, National Association as Trustee for MASTR Reperforming Loan Trust 2005-2 (Defendant/Appellee)
Specialized Loan Servicing LLC (Defendant/Appellee)
R. Dwayne Danner (Attorney for Defendants-Appellees)
Matt D. Manning (Attorney for Defendants-Appellees)
MCGLENCHEY STAFFORD, PLLC (Law firm for Defendants-Appellees)

Northsky LLC (Defendant)
Jason A. LeBoeuf (Attorney for Defendant)
LEBOEUF LAW FIRM, PLLC (Law firm for Defendant)

Date:  October 29, 2025.

/s/    *J.B. Peacock, Jr.*
J.B. Peacock, Jr.
Attorney of Record for Plaintiff-Appellant

i

## **STATEMENT CONCERNING ORAL ARGUMENT**

Appellant believes that the facts and issues that Appellant has raised in his Brief are particularly complex. Therefore, Appellant believes that oral argument would materially aid the Court in reaching a decision in this case. If oral argument is scheduled, Appellant believes that 20 minutes of oral argument allocated to each side would be sufficient to address the issue(s) in this appeal.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ..........................................................i

STATEMENT CONCERNING ORAL ARGUMENT........................................... ii

TABLE OF CONTENTS................................................................................. iii

INDEX OF AUTHORITIES..............................................................................iv

STATEMENT OF JURISDICTION....................................................................1

STATEMENT OF ISSUES ...............................................................................3

STATEMENT OF THE CASE...........................................................................3

SUMMARY OF ARGUMENT ..........................................................................7

STANDARD OF REVIEW ...............................................................................8

ARGUMENT AND AUTHORITIES...................................................................8

Issue No. 1: The district court erred in finding that there was evidence to support the presumption of receipt....................................................8

A: Presumption of Mailing .........................................................................8

B: Presumption of Receipt .......................................................................12

PRAYER.......................................................................................................13

CERTIFICATE OF SERVICE ........................................................................15

CERTIFICATE OF COMPLIANCE.................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Becker v. Tidewater, Inc.*, 586 F.3d 358 (5th Cir. 2009) ............................................8

*Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415 (5th Cir. 2007) ...............................9

*Draper v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 193014 (W.D. Tex. 2012) ................................................................................................12

*Duron v. Albertson's LLC*, 560 F.3d 288 (5th Cir. 2009) .......................................12

*In re Wm. B. Wilson Mfg. Co.*, 59 B.R. 535 (Bankr. W.D. Tex. 1986) ...................13

*Jauch v. Nautical Servs., Inc.*, 470 F.3d 207 (5th Cir. 2006) ..................................8

*One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258 (5th Cir. 2011) ................................................................................................8

*Pan American Bank v. Nowland,* 650 S.W.2d 879 (Tex. App.--San Antonio 1983, writ ref'd n.r.e.), *overr. on other grounds, Crimmins v. Lowry,* 691 S.W.2d 582 (Tex. 1985) .............................................................9

*Providence Behavioral Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448 (5th Cir. 2018) .........................................................................................8

*Scottsdale Ins. Co. v. Sessions*, 331 F. Supp. 2d 479 (N.D. Tex. 2003) ..................8

*Southland Life Ins. Co. v. Greenwade*, 138 Tex. 450, 159 S.W.2d 854 (Tex. 1942) ....................................................................................................12

*State & County Mut. Fire Ins. Co. v. Williams*, 924 S.W.2d 746 (Tex. App.—Texarkana 1996, no writ) .........................................................................8

*Texas Employers Ins. Ass'n v. Wermske,* 162 Tex. 540, 349 S.W.2d 90 (1961) ..........................................................................................................9

*Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940 (5th Cir. 1983) ...................................................................................................9, 12

**Statutes**

28 U.S.C. § 1291 ...............................................................................................3

28 U.S.C. § 1391 ...............................................................................................1

Tex. Fin. Code § 392.301(a)(8) ........................................................................2

**Rules**

Fed. R. Civ. P. 52(a)(6) .....................................................................................8

**Regulations**

38 C.F.R. 36.4350(h) ...............................................................................5, 6, 7, 13

## STATEMENT OF JURISDICTION

Appellant, Lester Lorenzo Rummans, will be referred to herein as "**Appellant**." Appellees, HSBC Bank USA, National Association as Trustee for MASTR Reperforming Loan Trust 2005-2 and Specialized Loan Servicing LLC, , will be referred to individually as "**HSBC**" and "**SLS**" and collectively as "**Appellees.**"

The property that is the subject of this appeal is located at 4445 Stones River Road, Grand Prairie, Texas 75052  (**"Property"**). ROA.116.

On August 29, 2022, Appellant filed the underlying lawsuit in Dallas County, Texas, in the County Court at Law No. 1. ROA.33.

On September 15, 2022, Appellees filed their notice of removal on the basis of federal question jurisdiction. ROA.20. Dallas County is in the territory of the United States District Court for the Northern District of Texas, Dallas Division ("**district court**"). 28 U.S.C. §§ 1391(a)(2) and (b)(2).

Appellant filed his first amended complaint on October 14, 2022. ROA.115. Appellees filed their answer and counterclaim on November 2, 2022. ROA.176.

Appellees filed a motion for summary judgment on March 29, 2023. ROA.224. Appellant responded to Appellees' motion for summary judgment on April 19, 2023. ROA.369.

1

On January 23, 2024, the United States Magistrate Judge Rebecca Rutherford entered her Findings, Conclusions, and Recommendation that Appellees' Motion for Summary Judgment be granted in part. ROA.492-518. On February 8, 2024, United States District Judge Barbara M.G. Lynn issued her Order Accepting the Findings, Conclusions, and Recommendation of United States Magistrate Judge. ROA.535. Appellant's claims for breach of contract and violation of Tex. Fin. Code § 392.301(a)(8) based on Appellees' failure to properly adhere to the VA Servicing Guidelines survived summary judgment. ROA.509-15. Appellant's request to set aside the foreclosure sale and for declarative relief based on Defendants' failure to properly adhere to the VA Servicing Guidelines also survived. ROA.515-16. Lastly, since Appellant's request for an accounting was not taken in summary judgment, (ROA.230-42); thus, it remained pending as well.

Following a two-day bench trial on Appellant's remaining claims, the district court entered its Findings of Fact and Conclusions of Law and Final Judgment on June 3, 2025, in favor of Appellees. ROA.1169-74.

Appellant filed his Motion to Reconsider and Motion to Alter or Amend Findings of Fact and Conclusions of Law and Final Judgment on July 1, 2025. ROA.1295.

The United States District Judge Barbara M.G. Lynn entered an Order denying Appellant's Motion to Reconsider on July 2, 2025. ROA.1323.

Appellant filed his notice of appeal on August 1, 2025, within 30 days of the Final Judgment. ROA.1337. Appellant appeals the Findings of Fact and Conclusions of Law dated June 3, 2025; the Final Judgment dated June 3, 2025; and the Order dated July 2, 2025. ROA.1337.

This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291.

**STATEMENT OF ISSUES**

**ISSUE NO. 1:** The district court erred in finding that there was evidence to support the presumption of receipt.

**STATEMENT OF THE CASE**

*Background*

The real property and improvements at issue in this case is located at 4445 Stones River Road, Grand Prairie, Texas 75052 ("**Property**"). ROA.34.

Appellant contends he is the rightful owner of the Property. ROA.403. Appellant is currently in possession of the Property. ROA.403.

Appellant is a veteran and retiree of the United States Army Reserve. ROA.404.

Appellant and his late wife purchased the Property on or about June 6, 2002. ROA.403.

Plaintiff refinanced the loan on August 1, 2003, and executed a Note payable to Mortgage Resource Group, LLC of OK dba City Mortgage Group LC.

3

ROA.407. On the same day, Appellant and his late wife, Tovonuia Rummans, executed a Deed of Trust to secure payment of the Note. ROA.411.

The Note and Deed of Trust will be referred to collectively herein as the "**Loan**."

Appellant's Loan is a VA loan. ROA.1362,1365.

The Note and Deed of Trust herein includes a notice: "THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT." ROA.411,414. Furthermore, the Note includes a provision that states that it is subject to "[r]egulations (38 C.F.R. Part 36) issued under the Department of Veterans Affairs ("VA") Guaranteed Loan Authority (38 U.S.C. Chapter 37) ...." ROA.412.

Moreover, the Deed of Trust states:

> "(I) **'Applicable Law'** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."

ROA.415.

Accordingly, the Deed of Trust and the VA Servicing Guidelines constitute an integrated contract.

Subsequently, HSBC obtained rights as holder of the Loan. SLS was the loan servicer and agent for HSBC.

Shortly after 9-11, Appellant's medical unit was reactivated in December 2003, and he served in the Iraq/Afghanistan war. But at the time of the purchase of the Property, in 2002, Plaintiff was not on active duty and worked at General Motors as a field adjuster. Plaintiff made payments on the mortgage before he was reactivated. ROA.404.

Appellant's wife passed away in 2013. ROA.404.

Appellant retired for a second time from the U.S. Army Reserve on December 5, 2020. ROA.433.

HSBC and SLS conducted a foreclosure sale of Appellant's Property on July 5, 2022. ROA.436. The Property was sold to Northsky. ROA.436.

*The Trial*

After summary judgment was granted in part, Appellant's remaining claims were the breach of the deed of trust contract, violation of the Texas Debt Collection Practices Act, suit to set aside the foreclosure sale and cancel the trustee's deed and declaration judgment based on violation of 38 C.F.R. 36.4350(h) of the VA Servicing Guidelines. ROA.118-27,509-16.

The district court held a two-day bench trial on the merits on February 19 and 20, 2025. ROA.1169.

At trial, Appellees presented on numerous letters ("Letters") they contended were mailed to Appellant to support of their compliance with the VA Servicing Guidelines. ROA.1170-71.

Kevin C. Payne testified as the corporate representative of Appellees. ROA.1355. The testimony given by Payne was that:

- Payne is a litigation case manager for Newrez LLC d/b/a Shellpoint Mortgage Servicing, who subsequently merged with SLS. ROA.1355-56.
- Payne never worked for SLS. ROA.1626,1628.
- Payne has no knowledge of SLS's mailing procedures. ROA.1627-28, 1636-38,1653-56.
- Payne had no independent knowledge whether the SLS's letters were ever actually mailed to Appellant at the Property. ROA.1627-28,1639,1641,1650,1652-53,1656.

Appellant offered the Deed of Trust which incorporates the 38 C.F.R. Part 36 regulations.

38 C.F.R. 36.4350(h) provides:

> (h) Conducting interviews with delinquent borrowers. When personal contact with the borrower(s) is established, the holder shall solicit sufficient information to properly evaluate the prospects for curing the default and whether the granting of forbearance or other relief assistance would be appropriate. At a minimum, the holder must make a reasonable effort to establish the following:
>
> a. the reason for the default and whether the reason constitutes a temporary or permanent condition;
> b. the borrower's present income and employment;
> c. the current monthly expenses of the borrower, including all household and debt obligations;

6

      d. the borrower's current mailing address and telephone number; and

      e. a realistic and mutually satisfactory arrangement for curing the default, if applicable.

*See* 38 C.F.R. 36.4350(h).

Appellant testified that Appellees never requested the reason for the default and whether it was a temporary or permanent condition. ROA.1415. Appellees never requested Appellant's present income or employment. ROA.1415. Appellees never requested Appellant's current monthly expenses, including household and debt obligations. ROA.1415. Appellees never requested Appellant's current mailing address and telephone number. ROA.1415-16. Appellees never established a realistic and mutually satisfactory arrangement for curing the default. ROA.1416.

The district court found that presumption of receipt was satisfied and that Appellees did not violate the VA Servicing Guidelines. ROA.1172-73. The district court entered judgment in favor of Appellees. ROA.1174.

## SUMMARY OF THE ARGUMENT

The crux of this appeal is that there was no evidence to support the presumption of mailing. And because the presumption of receipt ***arises*** after the presumption of mailing is created, the district court erred finding that the presumption of receipt was satisfied.

## STANDARD OF REVIEW

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 262 (5th Cir. 2011) (quoting *Becker v. Tidewater, Inc.*, 586 F.3d 358, 365 (5th Cir. 2009)). As such, this Court will upset the district court's findings of fact only if they are "left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 213 (5th Cir. 2006)). When the district court's findings of fact are largely based on the credibility of witnesses testifying at trial, "the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." *Providence Behavioral Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 455 (5th Cir. 2018) (quoting Fed. R. Civ. P. 52(a)(6)).

## ARGUMENT AND AUTHORITIES

**Issue No. 1:**   **The district court erred in finding that there was evidence to support the presumption of receipt.**

### A. Presumption of Mailing

In Texas, when the sender relies on office custom to raise the rebuttable presumption of mailing, he must offer corroborating evidence to support the inference that the custom was actually carried out. *Scottsdale Ins. Co. v. Sessions*, 331 F. Supp. 2d 479, 500 (N.D. Tex. 2003) (citing *State & County Mut. Fire Ins. Co. v. Williams*, 924 S.W.2d 746, 749 (Tex. App.—Texarkana 1996, no writ));

8

*Texas Employers Ins. Ass'n v. Wermske,* 162 Tex. 540, 349 S.W.2d 90, 92 (1961); *Pan American Bank v. Nowland,* 650 S.W.2d 879, 884 (Tex. App.--San Antonio 1983, writ ref'd n.r.e.), *overr. on other grounds, Crimmins v. Lowry,* 691 S.W.2d 582 (Tex. 1985).

A threshold question for the application of the rule is whether there is sufficient evidence that the letter was actually mailed. *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 419 (5th Cir. 2007). The Fifth Circuit in *Custer* persuasively explains that physical evidence that the letter was actually mailed ("such as business records, a signed receipt from certified mail, or a post-marked envelope") or testimony or affidavits concerning customary mailing practices as to the type of document in question is needed to accomplish this task. *Custer*, 503 F.3d at 419-20. If such evidence is presented and not rebutted, then it may be presumed that the letter was received. *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir. 1983).

Here, Appellees presented no evidence that the Letters were actually mailed. At trial, Kevin C. Payne, as the corporate representative of Appellees, testified that he worked for NewRez, LLC, who absorbed SLS in June or July 2024. ROA.1355-56. Mr. Payne was a litigation case manager for NewRez, LLC. ROA.1575. Mr. Payne never worked for SLS. ROA.1626,1628.

Mr. Payne testified that he had no independent knowledge that SLS's letters were mailed. ROA.1628. Mr. Payne testified that the letters were mailed by Covius, not SLS. ROA.1636. Mr. Payne had no knowledge of Covius's operations. ROA.1640,1648. Specifically, Payne testified as follows:

> "Q. [The Court] I don't want you to guess. I don't want you to tell me: Well, that's their job, so they must have done it. That's not what I want to know from you. I want to know what you know about that they actually did.
> A. If we're talking Covius, I can't give you an answer.
> Q. Okay.
> A. I don't know exactly how the letters were mailed."

ROA.1641.

> "Q. So when did SLS begin using Covius?
> A. I don't know exactly when, ma'am. I'm sorry.
> Q. When did they stop using Covius?
> A. I don't -- Well, probably at the merger.
> Q. Remind me: When was the merger?
> A. 2024. It would have been between May and July of 2024.
> Q. How do you know that these letters were in the hands of Covius?
> A. That was their procedure. They used Covius.
> Q. Who's 'they'?
> A. SLS.
> Q. Okay. But I asked you when did they use Covius and you don't know. So how do you know that these letters were ---
> A. Well, I thought you asked me when they stopped using. Well, I don't know how long they used Covius.
> …
> Q. So do you have any knowledge of the particular methodology that Covius used to process letters for SLS?
> A. No, I don't have any details on that."

ROA.1650.

"Q. So your belief is that Covius would process a letter. And after the letter was actually placed in the mail, it would send a copy electronically to SLS?

A. I can't say placed in the mail but available for -- to be picked up; totally processed and ready for the U.S. Postal Service.

Q. Okay. So have you ever observed or learned any detail about how the Covius process actually worked back in 2021?

A. Not specifically Covius, no, ma'am.

…

Q. And with respect to Covius and what its practice was at the times that are reflected in Exhibits 6 to 14, you don't know whether they put actual stamps on letters or metered postage or what they did.

A. Well, I don't have copies of the letters. I'm sorry. I don't have copies of the envelopes, but that was the procedure as I understood it. It would have been metered stamped.

Q. Okay. From what source do you have an understanding?

A. Just -- Well, from my personal knowledge and from talking to people that work with me that used to work at SLS. They're like legacy SLS employees.

Q. So are you telling me you've talked to SLS employees that have told you that Covius -- have told you anything about how Covius actually mailed documents?

A. No, not specifically that. From that part, I'm -- I'm judging -- I'm looking at what I know personally from my experience and how those machines work.

Q. Okay.

A. I don't know specifically -- Yes, ma'am. I don't know specifically what machine Covius used.

Q. And is it fair for me to say that with respect to what steps Covius took, you're extrapolating from your substantial experience in this industry with other companies but not Covius?

A. Yes. I mean that's -- I think that's fair to say, part of that, yes.

Q. Well, what -- what part of that is not?

A. Well, the fact that I don't know what machine they use.

Q. Well, what I'm trying to find out is what knowledge you have about Covius at all. Isn't it true that you are extrapolating exclusively from your experience with other companies to testify about what Covius did?

A. Well, I certainly wasn't meant -- I wasn't trying to do that. I was just trying to explain my experience in how companies that are like

11

> Covius work. I can't tell you specifically, you're correct. I can't tell you specifically how Covius works."

ROA.1651-54.

Not only was there no testimony of the customary mailing practices used by Covius, (the entity used by SLS to send letters), but also there was no physical evidence (post-mark envelopes or postage logs or any other circumstantial evidence) admitted that would have created the presumption. Moreover, Appellant testified that he never received any of the Letters. ROA.1485,1490,1494-95,1499,1511.

Accordingly, the presumption of mailing was not created.

## B. Presumption of Receipt

Because Appellees failed invoke the presumption of mailing, the presumption of receipt fails as a matter of law.

The presumption of receipt may be applied *after* "sufficient evidence that the letter was actually mailed." *Duron v. Albertson's LLC*, 560 F.3d 288, 290 (5th Cir. 2009) (citation omitted). The presumption may also be rebutted by "evidence of non-receipt." *Id.* at 291.

"[I]f evidence is presented showing the letter was not received, the presumption of receipt *vanishes*." *Draper v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 193014, *6 (W.D. Tex. 2012) (citing *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir. 1983) *(citing Southland Life Ins. Co. v.*

*Greenwade*, 138 Tex. 450, 159 S.W.2d 854, 857 (Tex. 1942) (Emphasis added).

Stated differently, the presumption of receipt disappears once rebutted. *In re Wm.*

*B. Wilson Mfg. Co.*, 59 B.R. 535, 539 (Bankr. W.D. Tex. 1986). The presumption

must then be decided upon the evidence presented. *Id.*

Even if the presumption of mailing was created, which Appellant denies,

there was evidence that Appellant never received the Letters. Appellant testified

that there were ongoing issues with receiving mail from the U.S. Post Office and

that the issues were occurring during the time frame of the Letters.

ROA.1480,1495,1509. Appellant testified that did not receive the Letters. ROA.

ROA.1485,1490,1494-95,1499,1511. Appellant's testimony coupled with the lack

of any personal knowledge or circumstantial evidence that the Letters were

actually mailed, the district court erred in finding that the presumption of receipt

was satisfied.

Accordingly, the Court should have found that there was no evidence of

compliance of the 38 C.F.R. 36.4350(h) of the VA Servicing Guidelines

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Appellant requests that the

Court vacate the Findings of Fact and Conclusions of Law and Final Judgment

dated June 3, 2025; reverse and render judgment for Appellant and that the case be

remanded to the trial court with instructions to set aside the foreclosure sale,

13

reinstate the Note and Deed of Trust, and award Appellant his attorney's fees in accordance with the Texas Debt Collection Practices Act; and for such other and further relief in law and equity to which Appellant may be justly entitled.

Respectfully submitted,

/s/    *J.B. Peacock, Jr.*

J.B. Peacock, Jr.
State Bar No. 15678500
David M. Vereeke
State Bar No. 20547500
**GAGNON, PEACOCK & VEREEKE, P.C.**
1349 Empire Central Drive
Suite 500, Lock Box 5
Dallas, Texas 75247
Telephone:  (214) 824-1414
Facsimile:   (214) 824-5490
Email:  attorneys@gapslaw.com

**ATTORNEYS FOR APPELLANT**

14

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 29th day of October 2025, a true and correct copy of the foregoing document was served via electronic transmission via portable document format (.pdf) to the EM/ECF Internet web portal for this Court in this Case on the following parties:

    a. the attorneys for Appellees-Defendants, R. Dwayne Danner and Matt D. Manning.

/s/ *J.B. Peacock, Jr.*
J.B. Peacock, Jr.
Attorney of Record for Plaintiff-Appellant

15

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.      This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because it contains 2,913 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2.      This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (Times New Roman, 14-point) using Microsoft Word.

Dated:   October 29, 2025.


/s/    *J.B. Peacock, Jr.*
J.B. Peacock, Jr.
Attorney of Record for Plaintiff-Appellant